IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HERITAGE FOUNDATION<br>214 Massachusetts Ave. N.E.<br>Washington, D.C. 20002<br><br>MIKE HOWELL<br>214 Massachusetts Ave. N.E.<br>Washington, D.C. 20002<br><br>                *Plaintiffs*,<br><br>v.<br><br>NATIONAL ARCHIVES AND<br>RECORDS ADMINISTRATION<br>700 Pennsylvania Ave. N.W.<br>Washington, D.C. 20408<br><br>                *Defendant*. | Case No. 23-cv-589 |

**COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively "Plaintiffs") for their complaint against Defendant NATIONAL ARCHIVES AND RECORDS ADMINISTRATION ("NARA") allege on knowledge as to Plaintiffs, and on information and belief as to all other matters, as follows:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the production of information related to the unprecedented announcement by the sitting President, Joseph R. Biden, that his staff discovered classified documents from his time as Vice President within the offices of the Penn Biden Center for Diplomacy and Engagement ("Penn Biden Center").

1

## PARTIES

2.      Plaintiff, The Heritage Foundation is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense." Heritage Foundation, *About Heritage*, *found at* https://www.heritage.org/about-heritage/mission (last visited Mar. 2, 2023).  Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public.  Heritage operates a national news outlet, *The Daily Signal*.

3.      Plaintiff Mike Howell leads the Heritage Foundation's Oversight Project and is an author for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.  The requests and analysis of information is informed by Heritage's deep policy expertise.

4.      Defendant NARA is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) which describes itself as "the nation's record keeper.  Of all documents and materials created . . . by the United States Federal government, only 1%–3% are so important for legal or historical reasons that they are kept by us forever."  NARA FAQs, https://www.archives.gov/faqs (last visited Mar. 2, 2022).  NARA purports to be "an independent establishment in the executive branch of the Government."  44 U.S.C. § 2102.  "The Administration shall be administered under the supervision and direction of the Archivist."  *Id.* at § 2102.  The Archivist is appointed by the President by and with the advice and consent of the Senate.  *Id.* at § 2103.  "The Archivist may be removed from office by the President.  The

President shall communicate the reasons for any such removal to each House of the Congress."

*Id.*

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

6.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant DOJ's principal place of business is in the District of Columbia.

## PLAINTIFFS' FOIA REQUEST

7.  Plaintiffs submitted their FOIA Request on January 10, 2023. FOIA Request No. NGC23-182 (Jan. 10, 2022) ("Request" or "Plaintiffs' FOIA Request") (Ex. 1).

8.  The Request sought the following records:

   1) All communications with White House Counsel's Office regarding these Obama-Biden era classified records.
   2) All communications with the Department of Justice regarding these Obama-Biden era classified records.
   3) All communications with President Joseph R. Biden's personal attorneys regarding these Obama-Biden era classified records.
   4) All internal NARA communications regarding these Obama-Biden era records.
   5) All calendars for this time period regarding these Obama-Biden era records.
   6) Any records that include the following: ["Penn Biden Center" OR "PennGlobal"].
   7) Any records or communications that include the following: "@pbc.upenn.edu".

*Id.* at 1.

9.  The Request sought these records for a very narrow period of time—"October 23, 2022 to November 16, 2022"—and for a limited set of custodians—"the following individuals and offices: (Acting) Archivist; Deputy Archivist; Office of General Counsel; and the Office of

the Chief of Staff (including the Chief of Staff, Communications and Marketing Division, and the Executive Secretariat)." *Id.*

10. The Request sought a fee waiver because:

> The requested information is in the public interest because Attorney General Merrick Garland appointed the Justice Department's former Public Integrity Chief Jack Smith to oversee the Justice Department's criminal investigations involving former President Donald Trump's possible mishandling of classified documents and presidential records at Trump's Mar-A-Lago estate and how this is analogous to the possible mishandling of classified documents and presidential records by President Biden at that the Biden Penn Center in D.C..

*Id.* at 4 (footnotes omitted).

11. The Request also sought expedited processing on the grounds that it concerned "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity." *Id.* (quoting 36 C.F.R. § 1250.28(a)(4)). The Request justified its application at length:

> On November 2, President Biden's Personal Attorneys provided Obama-Biden era classified records that were stored in the Penn Biden Center in D.C., as reported by CBS News on Monday and later reported by other outlets. These records were transmitted to the National Archives on November 2, six days before the midterm election. It has been reported that the National Archives referred the matter to the Department of Justice and that the Department of Justice is now investigating the matter. As Attachment 1 demonstrates, the press interest in these revelations is immense and on-going.
> As the articles cited it the margin and in Attachment 1 demonstrate, this press coverage has repeatedly surfaced "possible questions about the government's integrity which affect public confidence." On the most basic level the revelations that apparently classified records were found in an unsecured public facility raise questions about handling of classified information by the current President and his closest advisors. This plainly raises "possible questions about the government's integrity which affect public confidence." But these revelations take on a whole new dimension when contrasted against the decision by the President and Attorney General Merrick Garland to raid Mar-A-Lago as part of an inquiry into the former President's alleged mishandling of putatively classified information. National news reporters have repeatedly raised the question of whether President Biden is being treated differently than President Trump. Many such reports have gone further and stated that the available evidence strongly supports a conclusion that President Biden received preferential treatment. Moreover, as many press reports have noted, the timing of the revelations that classified records were

4

found at the Biden-Penn Center raises "possible questions about the government's integrity which affect public confidence." As reports note, the classified files were discovered prior the election and it appears that at a minimum NARA was notified that the files were located prior to the election. As coverage has asked, why was this information not made public prior the election? It likely would have had substantial electoral salience. Coverage has also noted that NARA repeatedly put out public statements concerning President Trump, and asked why did they not do so here? Clearly, such coverage surfaces "possible questions about the government's integrity which affect public confidence."

*Id.* at 6–7 (footnotes omitted). The application was supported with both marginal citations and a 313 page Appendix of relevant news articles.

## FOIA'S INITIAL DETERMINATION REQUIREMENT

12. An agency has 20 working days to make a "determination" on a FOIA request. *CREW v. FEC*, 711 F.3d 180, 185 (D.C. Cir. 2013). A determination requires the agency to: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188. Such a determination does not require production. *Id.* If an agency cannot comply with this timeline, they have but one "safety valve"—the ability to extend the time limit for making a determination to 30 working days based on a finding of "unusual circumstances" per 5 U.S.C. § 553(a)(6)(B)(iii). *Id.* at 187. Fail that and an agency cannot require administrative exhaustion. *Id.* at 189.

13. The first "prong" of the D.C. Circuit's test for constructive exhaustion is met only when it is clear that the agency has in fact gathered and reviewed the requested records. *See, e.g., Khine v. DHS*, 943 F.3d 959, 966–67 (D.C. Cir. 2019) (first prong met where "the agency gathered and reviewed—and in fact produced—more than 800 pages of responsive documents."); *Judicial Watch v. DOJ*, 410 F.Supp.3d 216, 223 (D.D.C. 2019) (second prong met

5

where Plaintiff filed FOIA Request for the entire FBI file investigating former Secretary of State Hillary Clinton's private email use and the FBI had communicated:  "(1) the estimated number of pages in the investigative file, (2) the types of documents contained in the file, and (3) the exemptions the FBI intended to claim with respect to withheld documents" as well as the fact that the FBI was processing the FBI file at 500 pages per month and would post each month's release at a public URL).

14. The second prong of the D.C. Circuit's test requires at a minimum "listing and defining the exemptions that the agency applied to the records responsive to" the request at issue. *Khine*, 943 F.3d at 967.  Necessarily, this requirement includes providing such data for *all* exemptions "*intended* to [be] claimed[ed] with respect to withheld documents." *Judicial Watch*, 410 F.Supp.3d at 223 (emphasis added).  Merely a partial accounting will not do.  The D.C. Circuit has suggested that this prong may also require some sort of "description of documents withheld," but has not reached that question.  *Khine*, 943 F.3d at 967.  At a minimum, the information provided on anticipated withholdings must provide an adequate basis for the requestor to lodge an administrative appeal.  *Judicial Watch*, 410 F.Supp.3d at 224–25.

15. The third prong of the D.C. Circuit's test appears to require a literal clear statement.  *See, e.g.*, *CREW*, 711 F.3d at 188; *Khine*, 943 F.3d at 966–67.

### **DEFENDANT'S FAILURE TO MAKE A DETERMINATION**

16. On January 17, 2023, NARA transmitted a letter to Plaintiffs acknowledging receipt of the Request.  Letter from Joseph A. Scanlon to Roman Jankowski, at 1 (Jan. 17, 2023) ("Acknowledgement") (Ex. 2).  The Acknowledgement assigned the Request a tracking number. *Id.*  Finally, the Acknowledgement passed on Plaintiffs' application for expedited processing: "After carefully reviewing your request, we have determined that expedition is warranted under

36 C.F.R. § 1250.28(a)(3). Your request has been added to NARA's expedited queue. We will process your request as soon as practicable and will let you know when we have any further updates." *Id.*[1] The Acknowledgement said nothing about Plaintiffs' fee status or their application for a fee waiver.

17.  On February 10, 2023, Plaintiffs received another letter from NARA. Letter from Joseph A. Scanlon to Mike Howell (Feb. 10, 2023) ("February Letter") (Ex. 3). That letter stated in full:

> This responds to Freedom of Information Act (FOIA) request assigned NGC23-182. NARA has received more than 25 FOIA requests seeking records related to the transfer of President Biden's Obama-era Presidential records to NARA from the Penn Biden Center and other locations, from November 1, 2022 to present.
>
> NARA is processing all related requests in the same manner: identifying categories of commonly requested subject matter and organizing its searches and responses by those categories. We will issue response letters on a rolling basis and post any non-exempt, responsive materials to the landing page located at https://www.archives.gov/foia/biden-vp-records-covered-by-pra.
>
> "Category 1" refers to emails between NARA officials and representatives of President Biden related to the transfer of Obama-era Presidential records to NARA, from November 1, 2022 to present.
>
> Today's release consists of 74 pages of Category 1 emails, which we are releasing with parts redacted under FOIA exemptions (b)(6) and (b)(7)(E). Please consult the landing page for today's release.
>
> Exemption (b)(6) was asserted to protect the release of information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
>
> Exemption (b)(7)(E) was asserted to protect information that, if disclosed, could reasonably be expected to risk circumvention of the law.
>
> This response completes processing of 74 pages of records responsive to Category 1.

---

[1] The Acknowledgement provided no explanation of why it granted expedited processing pursuant to 36 C.F.R. § 1250.28(a)*(3)* when Plaintiffs sought expedited processing under 36 C.F.R. § 1250.28(a)*(4)*.

Id. at 1.  The February Letter was accompanied by a 74 page production of emails responsive to "Category 1".  Several "[f]ormal communications" between NARA and Congress have also been published at the URL provided by the February Letter.

18. "Category 1" referred to in the February Letter roughly overlaps with Specification 3 in the Request—one of 7 specifications.  It also is both temporally under and over inclusive as compared to the Request.  The Request seeks records "from October 25, 2022 to November 16, 2022" whereas "Category 1" runs from November 1, 2022 to February 10, 2023.

19. At no time did NARA seek consent from Plaintiffs to process the Request by amalgamation of other putatively similar FOIA Requests into artificial "Categories" that appear to be both over and under inclusive of Plaintiffs' FOIA Request.  Had NARA consulted with Plaintiffs, Plaintiffs would have objected to NARA's failure to process what Plaintiffs seek— *their* Request.

20. The Acknowledgement is not a determination.

21. The February Letter is not a determination.

22. NARA has not "gather[ed]" the records sought by the Request.  *CREW*, 711 F.3d at 188.

23. NARA has not "Review[ed] the records sought by the Request.  *Id.*

24. NARA has not determined the "scope of documents it intends to produce and withhold."  *Id.*

25. NARA has not identified reasons for any anticipated withholdings as to the "documents it intends to produce and withhold."  *Id.*

26. The Acknowledgment does not inform Plaintiffs of any right of administrative appeal.

27. The February Letter does not inform Plaintiffs of any right of administrative appeal.

28. Plaintiffs have received no further communications from NARA.

29. NARA has not made a "determination" on the Request.

30. 20 business days from January 10, 2023 is February 8, 2023.

### FIRST CLAIM FOR RELIEF
### Violation FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records.

31. Plaintiffs re-allege paragraphs 1–30 as if fully set out herein.

32. FOIA requires all doubts to be resolved in favor of disclosure. "Transparency in government operations is a priority of th[e Biden] . . . Administration." Attorney General, *Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

33. Plaintiffs properly requested records within the possession, custody, and control of Defendant.

34. Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

35. Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' FOIA Request.

36. Defendant's failure to conduct searches for responsive records violates FOIA and DOJ regulations.

37. Plaintiffs have a statutory right to the information they seek.

38. Defendant is in violation of FOIA.

39. Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news. Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

40. Plaintiffs have no adequate remedy at law.

41. Plaintiffs have constructively exhausted their administrative remedies.

### SECOND CLAIM FOR RELIEF
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

42. Plaintiffs re-allege paragraphs 1–41 as if fully set out herein.

43. FOIA requires all doubts to be resolved in favor of disclosure. "Transparency in government operations is a priority of th[e Biden] . . . Administration." Attorney General, *Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

44. Plaintiffs properly requested records within the possession, custody, or control of Defendant.

45. Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

46. Defendant is wrongfully withholding non-exempt records requested by Heritage by failing to produce any records responsive to Plaintiffs' FOIA Request.

47. Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA Request.

48. Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

49. Plaintiffs have a statutory right to the information they seek.

50. Defendant is in violation of FOIA.

51. Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news. Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

52. Plaintiffs have no adequate remedy at law.

53. Plaintiffs have constructively exhausted their administrative remedies.

### THIRD CLAIM FOR RELIEF
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

54. Plaintiffs re-allege paragraphs 1–53 as if fully set out herein.

55. FOIA requires all doubts to be resolved in favor of disclosure. "Transparency in government operations is a priority of th[e Biden] . . . Administration." *Attorney General, Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

56. Plaintiffs properly requested records within the possession, custody, or control of Defendant.

57. Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. §16.10(k).

58. The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

59. Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*. 5 U.S.C. § 552(a)(4)(a)(ii).

60. Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii).

61. Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request. 5 U.S.C. § 552(a)(4)(A)(viii)(I).

62. Plaintiffs have a statutory right to a fee waiver.

63. Defendant is in violation of FOIA by denying a fee waiver.

64. Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news. Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

65. Plaintiffs have no adequate remedy at law.

66. Plaintiffs have constructively exhausted their administrative remedies.

## FOURTH CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Statutory Bar Against Charging Fees

67. Plaintiffs re-allege paragraphs 1–66 as if fully set out herein.

68. FOIA requires all doubts to be resolved in favor of disclosure. "Transparency in government operations is a priority of th[e Biden] . . . Administration." Attorney General, *Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

69. Plaintiffs properly requested records within the possession, custody, or control of Defendant.

70. The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

71. Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*. 5 U.S.C. § 552(a)(4)(a)(ii).

72. Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii).

73. Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request. 5 U.S.C. § 552(a)(4)(A)(viii)(I).

74. Defendant has not determined "more than 5,000 pages are necessary to respond to this request," or discussed with Plaintiffs how Plaintiffs "could effectively limit the scope of the request." 5 U.S.C. § 552(a)(4)(A)(viii)(II)(cc).

75. Defendant is currently statutorily barred from charging fees related to Plaintiffs' FOIA Request. Therefore, Plaintiffs have a statutory right to have their request processed without being charged any fees.

76. Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

77. Plaintiffs have no adequate remedy at law.

78. Plaintiffs have constructively exhausted their administrative remedies.

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A. Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

B. Order Defendant to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

C. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA Request;

D. Enjoin Defendant from assessing fees or costs for Plaintiffs' FOIA Request;

E. Retain jurisdiction over this matter as appropriate;

F.       Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

G.       Grant such other and further relief as this Court may deem just and proper.

Dated: March 3, 2023                              Respectfully submitted,

                                                              /s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone: (703) 261-4194
Email: samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)

The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)

The Heritage Foundation
Telephone: (202) 489-2969
Email: Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*